# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>**WASEEM KHAN,**<br><br>DEBTOR. | CHAPTER 7<br>CASE NO. 20-BK-17315<br><br>HON. A. BENJAMIN GOLDGAR |
| **PATRICK S. LAYNG,**<br>**UNITED STATES TRUSTEE,**<br><br>PLAINTIFF,<br><br>V.<br><br>**WASEEM KHAN,**<br><br>DEFENDANT. | ADV. NO. _____ |

## COMPLAINT TO DENY DISCHARGE UNDER
## 11 U.S.C. § 727(A)(2), (A)(4), AND (A)(5)

Patrick S. Layng, the United States Trustee for the Northern District of Illinois (the "*U.S. Trustee*" or the "*Plaintiff*"), by and through his attorney, David Paul Holtkamp, hereby requests that the Court enter a judgment against Waseem Khan (the "*Defendant*" or "*Debtor*") under 11 U.S.C. § 727(a)(2), (a)(4) and (a)(5) denying him a discharge. As and for his Complaint, the U.S. Trustee respectfully states to the Court as follows:

## COMPLAINT SUMMARY

1.  The Defendant has been manipulating his rights and concealing his assets for years to appear destitute during his divorce proceedings and now during this

— 1 —

bankruptcy case. Prior to the divorce proceedings and the filing of this bankruptcy case, the Defendant lived a lavish lifestyle. He managed a family real estate business with about $170,000 per month in revenue. The Defendant owned a Bentley (actually two Bentleys, one was totaled prepetition), a Rolls Royce, and either leased or owned 4 additional luxury vehicles for his wife and children to use. His marital home, which was in his name individually until right before the divorce proceedings were commenced, is worth nearly a million dollars.

2.    Instead of paying spousal support, the Defendant transferred the Bentley to his father and asserts that the Rolls Royce was his father's as well. He also transferred his $1 million home to a trust his sister now controls (and who is currently attempting to sell it) and asserts that he no longer has an interest in the family business he ran for 20 years — a business that sold $22 million in assets in late 2019, likely netting over $10 million. Over the past few years, the judge in the divorce case has seen through this scheme. It found the Defendant in contempt at least half a dozen times, expressly held his testimony about his inability to pay is spousal support obligations not to be credible at least 4 times, and even ordered him taken into custody just months ago for his recalcitrance.

3.    The Defendant then filed for bankruptcy and moved to Georgia (outside the jurisdiction of the Cook County Sheriff). He is now purportedly working for $10 per hour. However, even the position appears to be part of the scheme. It is at a medical practice another one of his sisters, a doctor, owns.

4.    As provided in more detail below, the Defendant has continuously concealed assets leading up to the filing of this bankruptcy case and during the pendency of the

case. Discharge should be denied under 11 U.S.C. §727(a)(2). The Defendant has also made false statements on his bankruptcy documents. Discharge should be denied under 11 U.S.C. § 727(a)(4). Finally, the Defendant has failed to satisfactorily explain his loss of assets and inability to satisfy his liabilities. Discharge should be denied under 11 U.S.C. § 727(a)(5).

## JURISDICTION AND VENUE

5.      The underlying chapter 7 bankruptcy case was filed by the Defendant on September 18, 2020 (the "*Petition Date*").  *See* Dkt. No. 1. That case remains pending.

6.      The last day to object to discharge under 11 U.S.C. § 727(a) is April 23, 2021. Therefore, this Complaint is timely filed.

7.      This Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. § 157 and IOP 15(a) and LR 40.3.1 of the United States District Court for the Northern District of Illinois.

8.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (b)(2)(J) and in the event this is a non-core proceeding, the Plaintiff consents the to the entry of a final order by the bankruptcy court.

9.      Venue of this proceeding is proper in this Court pursuant to 28 U.S.C. § 1409(a).

10.    The Plaintiff files this Complaint pursuant to 11 U.S.C. §§ 727 and Fed. R. Bankr. P. 7001.

11.    The Plaintiff has standing to bring this Complaint and ask for the relief requested therein pursuant to 11 U.S.C. §§ 307 and 727(c)(1).

**PARTIES**

**I.    Plaintiff - The U.S. Trustee.**

12.    Plaintiff, Patrick S. Layng, is the duly appointed United States Trustee for the Northern District of Illinois and is charged with supervising the administration of bankruptcy cases pursuant to 28 U.S.C. § 586.

13.    The U.S. Trustee maintains his principal place of business at 219 S. Dearborn St., Room 873, Chicago, Illinois, within this district.

**II.    Defendant – Waseem Khan.**

14.    The Defendant is the debtor in the underlying bankruptcy case, *In re Khan* (20-bk-17315). He is an individual that was domiciled within this district on the Petition Date at 6602 N. Spokane, Lincolnwood, IL (the "*Spokane House*").

15.    The Defendant asserts that he moved after Petition Date and is now domiciled at 1124 Hyacinth Lane, Peachtree City, Georgia.

16.    On information and belief, the Defendant currently resides at 219 Smokerise Terrace, Peachtree City, GA.

**FACTS RELEVANT TO ALL COUNTS**

17.    The bankruptcy petition in this case was filed as a "skeletal petition," without any schedules or required statements.

18.    On October 1, 2020, the Defendant filed his Schedule A/B, C, D, E/F, G, H, I, J, his Statement of Financial Affairs, Statement of Intention, Statement of Current Monthly Income, Statement of Exemption, Disclosure of Compensation to Attorney, as well as the applicable declarations under penalty of perjury that the information contained in these documents was true and correct.

19.   On November 17, 2020, the Defendant filed an amended Schedule A/B to disclose a 2007 Rolls Royce Phantom, the ownership of which he claimed was disputed, and to disclose a 20% interest in Dera Leasing & Construction Company.

20.   The Defendant's original 2016(b) Statement did not disclose the source of the $10,000 the Defendant's counsel received in this case. It instead merely provided that it came from the IOLTA of Brown, Udell, Pomerantz & Delrahim.

21.   The Defendant also did not file the retainer agreement as required by Local Rule 2016-1.

22.   On March 22, 2021, after the Plaintiff disclosed in open court that he intended to file this complaint, the Defendant filed the attorney retention agreement, an amended Statement of Financial Affairs, and amended 2016(b) Statement.

23.   The Plaintiff asked the Defendant to amend the 2016(b) to disclose the source of the $10,000 and to file the attorney retention agreement multiple times prior to that point. The Defendant and counsel both originally asserted they did not know the actual source of the funds paid to counsel and that some digging was required to discover where the money came from.

24.   The amended 2016(b) statement now provides the funds were provided by the Defendant's sister, Shameem Khan, although whether this came from the LMK Trust (as defined below) remains unknown.

25.   The Defendant declared under penalty of perjury that the information contained in all of these documents was true and correct to the best of the Defendant's knowledge.

26.   No other amendments to any required Schedules, Statements, or related

documents have been filed.

## I. The Defendant's Background and Family.

27. On or about June 14, 1992, the Defendant was married to Mehvish Arif Khan ("*Mehvish*").

28. Both the Defendant and Mehvish were born in India and their marriage was arranged.

29. Mehvish was approximately 17 years of age when she married the Defendant.

30. Since Mehvish emigrated to the United States, she was primarily a homemaker with limited work experience outside of the home.

31. The marriage between the Defendant and Mehvish was substantially broken down by 2015.

32. On or about June 2, 2016, Mehvish filed a petition for dissolution of marriage in the Circuit Court of Cook County (the "*Divorce Court*"), initiating case no. 2016-D-005177 (the "*Divorce Case*").

33. A true and correct copy of the petition for dissolution filed to initiate the Divorce Case is attached as **Exhibit A**.

34. The Divorce Case remains pending, however, the Defendant and Mehvish have been living separate and apart since 2016.

35. The Defendant and Mehvish have three daughters: Sana Khan; Sara Khan; and Saharish Khan. None of them are minors.

36. The Defendant's father is Lateef Khan, a/k/a Lateef Mohammed Khan, a/k/a Khan Lateef Khan ("*Lateef*").

37. Acronyms of Lateef's name, such as KLK and LMK, have been used in the

names of trusts and entities he and his family members have created.

38. Lateef passed away on or about August 6, 2020.

39. The Defendant's mother is Sakura Khan, a/k/a Zakira Khan ("*Zakira*").

40. Zikira passed away in May of 2020.

41. The Defendant has five siblings, however, only one, his sister Shameem S. Khan ("*Shameem*"), has the same mother.

42. Shameem is married to Hyder Mohammed ("*Hyder*").

43. Shameem resides at 1017 Crystal Court, Glenview, IL with her husband.

44. The Defendant has at least two siblings that live in Georgia, a brother named Aslam Khan and a sister named Zia Khan.

45. Zia Khan ("*Zia*") is the owner, CEO, CFO, Secretary, and registered agent of the Peachtree Medical Center, P.C., with its principal place of business as 190 Greencastle Road, Tyrone, GA, 30290.

46. After filing this case the Defendant moved to Georgia and has purportedly taken a position with his sister's company for $10 per hour.

## II. The Defendant's Substantial Family Business.

47. Since at least the early 2000's the Defendant has worked individually and through Khan & Associates, Inc. (or its predecessor KLK & Associates, Inc.), overseeing his family's substantial real estate holdings in the United States owned through several trusts.

48. On information and belief these real estate holdings generated in excess of $170,000 per month in revenue.

49. Those real estate holdings included properties located at: 730 W. Cornelia

Ave, Chicago, IL (the "*Cornelia Property*"); 5101-5115 N. Sheridan Road, Chicago, IL (the "*Sheridan Property*"); 949-955 W. Foster Ave., Chicago, IL (the "*Foster Property*"); 2414-24 W. Devon Ave., Chicago, IL (the "*2414 Property*"); and 2635-39 W. Devon Ave, Chicago, IL (the "*2635 Property*", collectively the "*Family Properties*").

50. The Defendant managed the accounting, made the decisions regarding deposits and receipts, and had substantial discretion in determining what bills and expenses were paid by Khan & Associates and on account of the Family Properties.

51. For example, in 2015 the Debtor owned or leased a luxury vehicle for each of his three daughters to use and another for his wife. Those vehicles were titled in the Defendant's name but the expenses were paid by Khan & Associates.

52. At the same time the Defendant also owned a 2015 Bentley Continental with a lien against it for approximately $230,000. It appears Khan & Associates paid the expenses of maintaining that vehicle as well.

53. The Defendant individually also marketed the Sheridan Property for sale in 2015 for about $15 million without family approval.

54. The Defendant's late father, Lateef, also had significant holdings in India.

55. Those holdings included a building called the Khan Lateef Khan Estate, or the KLK Estate building, located at KLK Estate Lane, Fateh Maidan, Adids, Hyderabad, Telangana 500001, India.

## III. The Early 2000's Division of the Family Properties.

56. Since at least the early 2000's, each of the Family Properties was owned in an Illinois Land Trust by the Chicago Title Land Trust Company, or one of its predecessor institutions, under various trust numbers.

57. The Sheridan Property was held under Trust No. 25-2956 (the "*Sheridan Trust*").

58. The Cornelia Property was held under Trust No. 20650 (the "*Cornelia Trust*").

59. The 2414 Property was held under Trust No. 124149-00 (the "*2414 Trust*").

60. The Foster Property was held under Trust No. 103917-04 (the "*Foster Trust*").

61. The 2635 Property was held under Trust No. 103854-09 (the "*2635 Trust,*" collectively the "*Family Property Trusts*").

62. Between 1999 and 2001 trust documents were executed providing the Defendant with the sole contingent beneficial interest in 4 of the 5 Family Property Trusts, that is, the Sheridan Trust, the Cornelia Trust, the 2414 Trust, and the Foster Trust.

63. Under these documents, upon Lateef's death, or upon the death of Lateef and his wife, the Defendant would become the sole beneficial owner these trusts.

64. True and correct copies of the "Amendments of Contingent Beneficial Interest" for the Sheridan Trust, the 2414 Trust, and the Foster Trust and the "Amendment for Survivorship Provisions" for the Cornelia Trust are attached as **Exhibit B**.

65. Under Illinois law, the beneficial owner of a land trust is in effect the owner of the underlying real estate.

66. In or about 2007, a document was executed providing the Defendant's sister, Shameem, with the sole contingent beneficial interest in 1 of the 5 Family Property Trusts, that is, the 2635 Trust.

67. Under that document, upon the death of both Lateef and his wife, Shameem would become the sole beneficial owner of this trust.

68. True and correct copy of the "Designation of Contingent Beneficial Interest" for the 2635 Trust is as **Exhibit C**.

## IV. Transfers and Concealment in Contemplation of Divorce.

69. On information and belief, by the middle of 2015, the Defendant's marriage to his wife had substantially broken down.

70. The Defendant and his family effectuated a scheme to make the Defendant appear destitute with no assets available to help support his wife in the event of a divorce.

71. On June 1, 2015, documents entitled "Amendment of the Contingent Beneficial Interest" were execute for each of the Family Property Trusts.

72. True and correct copies of those documents are attached as **Exhibit D**.

73. The Sheridan Trust, the Cornelia Trust, the 2414 Trust, and the Foster Trust, that is, all the Family Property Trusts that the Defendant had a contingent interest in, were amended to add several restrictions.

74. Specifically, the June 1, 2015 amendments provided:

> specifically excluded from the rights, title, interests and powers that pass to Waseem Khan are: (i) any and all rights or powers to gift, grant, assign or otherwise transfer any interest in this Trust to his spouse, Mehvish Khan, and (ii) any and all rights powers to direct a deed or create any encumbrance or line upon the beneficial interest, the power of direct or the real estate which is the corpus of this Trust or in favor of Mehvish Khan or any other person or entity claim through or under Mehvish Khan, *it being the express intention of this Amendment […] to assure that no interest in the Trust shall pass to Mehvish Khan […] under any circumstances or for any reason[…]*.

75.   In May 2016, immediately prior to the filing of the Divorce Case, but after Mehvish had moved out of their joint residence at 6602 N. Spokane, Lincolnwood, IL, *i.e.*, the Spokane House, the Defendant caused a quit claim deed to be recorded.

76.   The deed purportedly transferred the Spokane House from the Defendant individually to the Chicago Title Land Trust Company, trust no. 25-4463 (the "*Spokane Trust*").

77.   A true and correct copy of the quit claim deed dated May 17, 2016 and recorded May 19, 2016, is attached as **Exhibit E**.

78.   Prior to the recording of that quit claim deed the Spokane House was owned by the Defendant individually, by deed recorded on 1/23/2004, with the Cook County Recorder of Deeds under Doc. No. 0402304273.

79.   Additionally, in 2005 the Defendant individually provided a mortgage against the Spokane House where he asserted in the mortgage document that he was the owner and had the right to encumber it.

80.   On May 21, 2016, only five days after the quit claim deed transferring the Spokane House was recorded, the Spokane Trust was amended.

81.   A true and correct copy of that "Amendment of Contingent Beneficial Interest" dated May 21, 2016, is attached as **Exhibit F**.

82.   That amendment provided Shameem, the Defendants sister, a 50% interest in the Spokane Trust upon Lateef's death.

83.   The amendment also provided that the other 50% would still go to the Defendant upon Lateef's death, but contained all the exact same significant restrictions found in the June 1, 2015 amendments of the Family Property Trusts

with respect to Mehvish.

84.   The amendment specifically provided that "it being the express intention of this Amendment […] to assure that no interest in the Trust shall pass to Mehvish Khan […] under any circumstances or for any reason[…]."

85.   Also in May of 2016, immediately prior to the filing of the Divorce Case, the Defendant transferred title to a 2007 Bentley Flying Spur from his name to Lateef.

86.   As of the Petition Date, the Flying Spur was located at the Defendant's Spokane House and was still registered in Lateef's name, although he has passed.

87.   The Defendant did not receive any compensation from Lateef for the transfer of the Flying Spur.

88.   On information and belief, the Flying Spur is unencumbered and now under the control of the Defendant's sister, Shameem.

## V.   Transfers and Concealment During the Divorce Case.

### A. The Defendant is Purportedly Terminated from Khan & Associates.

89.   On or about June 2, 2016, Mehvish filed a petition for dissolution of marriage in the Circuit Court of Cook County, initiating the Divorce Case and immediately sought a temporary restraining order and then sought spousal maintenance.

90.   On or about June 10, 2016, the court in the Divorce Case entered an Agreed Temporary Restraining Order (the "*TRO*") against the Defendant.

91.   A true and correct copy of TRO is attached as **Exhibit G**.

92.   The TRO enjoined the Defendant from transferring, assigning, encumbering, damaging, or concealing any real or personal property, or income in which Mehvish or the Defendant had any interest in whatsoever, except for customary expenses.

93.　Shortly thereafter, the attorneys for the Defendant or his father, Lateef, "asked that Mehvish Khan be flexible concerning her demand for temporary maintenance."

94.　Mehvish then filed a petition for temporary maintenance, to which the Defendant and Lateef responded:

> Waseem Khan is being terminated from any employment with Khan & Associates and his signature authority on any and every financial account is being revoked….
>
> [Lateef] has reiterated to us that he will not provide Mehvish Khan or her family with any further support.

95.　A true and correct copy of the July 8, 2016, letter from Michael Pildes is attaches as **Exhibit H**.

96.　The Defendant was purportedly terminated with the actual intent to hinder, delay, or defraud Mehvish by concealing the Defendant's true income and assets from the Divorce Court.

97.　On or about October 4, 2016, the Divorce Court entered an order on maintenance requiring the Defendant to pay Mahvish $5,800 per month.

98.　A true and correct copy of that order (the "*Maintenance Order*") is attached as **Exhibit I**.

99.　The Maintenance Order also required the Defendant to continue to pay the expenses on the Spokane House, as well as the expenses for real property owned by the Defendant and Mehvish.

100.　The Defendant filed a financial affidavit dated April 19, 2017, in the Divorce Case asserting that he was no longer working for Khan & Associates and was

unemployed.

101. A true and correct copy of the financial affidavit dated April 19, 2017, is attached as **Exhibit J**.

102. Although the Defendant purportedly no longer worked for Khan & Associates, the April 19, 2017 affidavit revealed that the Defendant owned a 2015 Bentley Continental with a lien against it for $233,600, owned a 2007 Rolls Royce Phantom, and owned or leased three other luxury vehicles for his children to drive.

103. The affidavit also asserted that the costs and expense of these vehicles were still paid by the Defendant's purportedly prior employer, Khan & Associates.

104. A few months after entry of the Maintenance Order, the Defendant stopped paying. Between February and July of 2017, the Defendant failed to pay $34,800 due under the Maintenance Order.

105. After hearing the Defendant's testimony in open court, the Divorce Court held the Defendant in indirect civil contempt on July 20, 2017, for his failure to pay.

106. The Divorce Court found the Defendant's testimony asserting inability to pay incredible and held his failure to pay "willful" and "without good cause or reason."

107. A true and correct copy of the indirect civil contempt order entered on July 20, 2017 is attached as **Exhibit K**.

### B. The Creation of the LMK Illinois Family Trust

108. On March 28, 2017, with the Defendant in default under the Maintenance Order, the LMK Illinois Family Trust (the "*LMK Trust*") was created.

109. A true and correct copy of the LMK Trust creation document is attached as **Exhibit L**.

110. The LMK Trust was created to "provide for [Waseem and Shameem Khan] and no other children born to or adopted at any time by [Lateef].

111. All of Lateef's real and personal, tangible and intangible property located in Illinois as of March 28, 2017, was transferred into the LMK Trust, including his ownership of all of the Family Properties through the Family Property Trusts.

112. The Spokane House was also transferred into the LMK Trust at that time through the Spokane Trust.

113. Under the LMK Trust, upon the death of Lateef and his wife, the balance of the estate property would be held by the trustee for the benefit of Waseem and Shameem and their descendants subject to the "Family Trust" provisions.

114. The Family Trust provisions provide that the trustee

> may pay as much of the income and principal of the Family Trust to any one or more of my spouse, *my children* [Waseem and Shameem], … as from time to time considers necessary or appropriate, in the trustee's sole discretion, for the health, educations, maintenance, comfort, or general welfare of the beneficiary, which may include but not be limited to acquisition and furnishing of principal residences, family vacations and weddings or other significant family events. Spouses of my children shall not receive any distributions of income, principal or interest from the trust. …

115. While the trustee of the LMK Trust is given broad discretion with respect to distributions, under Illinois law the trustee cannot withhold distributions under an improper motive, due to a conflict of interest with the beneficiary, or if it would be objectively unreasonable.

116. By January 18, 2018, the Defendant had again failed to meet his obligations under the Maintenance Order and the Divorce Court held him in indirect civil contempt again.

117. A true and correct copy of the indirect civil contempt order dated January 18, 2018, is attached as **Exhibit M**.

118. The Divorce Court specifically found on January 18, 2018 it "*finds that Waseem Khan's testimony was incredible.*"

119. The Court also found that the Defendant "has the ability to comply with the [Maintenance Order] …and his failure to do so is willful, contemptuous and without compelling cause or justification."

120. On June 4, 2018, the Defendant sister, Shameem, was substituted as the successor trustee to take control of LMK Trust and thereby control of the Family Properties upon Lateef's death.

121. A true and correct copy of the First Amendment to the LMK Trust dated June 4, 2018, is attached as **Exhibit N**.

### C. The Defendant Discloses he is Working for Khan & Associates Again.

122. On April 18, 2018, the Defendant executed a new financial affidavit that was filed in the Divorce Case.

123. The April 18, 2018, financial affidavit is attached has **Exhibit O**.

124. The April 18, 2018 affidavit disclosed that the Defendant was again working for Khan & Associates, earning about $8,000 per month.

125. The affidavit also disclosed an additional $2,575 per month in rental income from the real estate that he and Mehvish directly owned.

126. Finally, the affidavit disclosed $10,000 per month in "Gifts of money" with the note that this amount "fluctuates based on expenses."

127. The total gross monthly income listed on the affidavit was $20,608.00, or

$247,296 annually ($20,608 x 12).

128. A few months later, by order dated July 30, 2018, the Divorce Court ordered the Defendant's monthly maintenance increased by $500 per month to $6,300 per month ($75,600 annually), starting on August 1, 2018.

129. The Divorce Court again found the Defendant had the ability to make such payments.

### D. The Defendant's Relationship with Amanda Argubright.

130. In 2018 the Defendant started a new romantic relationship with a woman named Amanda Argubright.

131. In the year between 2018 and 2019 the Defendant gave Ms. Argubright gifts worth approximately $36,000.

132. At the same time the Defendant was lavishing Ms. Argubright with gifts, he was asserting to the Divorce Court that he had no money available to make his spousal support obligations.

### E. Sale of Two of the Family Properties for $22 Million.

133. In 2019 the Sheridan Property and the Foster Property were put up for sale.

134. On or about July 31, 2019, those two properties were sold for $22,000,000 ($22 million).

135. A true and correct copy of the settlement statement for that sale is attached as **Exhibit P**.

136. The Sheridan Trust and the Foster Trust were the sellers of those properties, and the LMK Trust owned the beneficial interest in those land trusts.

137. $5,397,169.00 in proceeds from the sale of the Sheridan Property and the

Foster Property were sent to Investment Property Exchange Services.

138. On information and belief, Investment Property Exchange Services is a 1031 Exchange service that holds real estate sales proceeds until the owner can locate a new investment property to purchase.

139. On information and belief, the $5,397,169.00 was cash proceeds from the sale that belonged to the sellers.

140. An additional $5,632,500.00 in proceeds from the sale were held in "post closing escrow to Proper Title LLC," which was the title company that handled the closing.

141. On information and belief, that $5,632,500.00 or a substantial portion of it was also cash proceeds from the sale that belonged to the sellers.

142. On information and belief, the sale of the Sheridan Property and Foster Property netted approximately $11 million.

143. At the time of the sale, the Defendant was a beneficiary of the LMK Trust along with his sister Shameem.

### F. The Divorce Court Again Finds the Defendant's Testimony Incredible.

144. On or about May 20, 2020, the Defendant filed a motion in the Divorce Case to modify the support orders.

145. A month later, on June 10, 2020, Mehvish filed a motion for rule to show cause to hold the Defendant in contempt for his continued failure to pay.

146. On or about July 17, 2020, the Divorce Court held a hearing and again heard the Defendant's testimony regarding his ability to pay.

147. On July 17, 2020, the Divorce Court entered an order providing that "*The*

*Court did not find Waseem's testimony to be credible."*

148. The Court went on to hold that the Defendant's "failure to pay maintenance to [Mehvish …] is willful, contemptuous, and without compelling cause or justification. [Waseem] failed to provide any legally sufficient reasons for his failure to comply with the support orders or demonstrate his inability to comply with said orders."

149. The Court then held that the Defendant "has the financial ability to pay reasonable amounts towards [Mehvish's] interim and prospective attorney's fees and costs[.]"

150. A true and correct copy of the July 17, 2020, order is attached as **Exhibit Q**.

151. The Defendant was then ordered to pay $10,000 per month toward Mehvish's legal fees for the next 3 months.

152. On the same day, July 17, 2020, a case management order was entered in the Divorce Case setting the matter for a four-day trial to begin on November 9, 2020, at 10 am.

153. A true and correct copy of the case management order is attached as **Exhibit R.**

### G. Lateef's Death and Creation of KLK Management, LLC

154. Lateef passed away on August 6, 2020. Zikira passed away in May of 2020.

155. By its terms, Shameem then took over as the sole trustee of the LMK Trust, but Shameem and the Defendant remained the beneficiaries.

156. On September 17, 2020, one day before the Defendant filed for bankruptcy, Shameem executed Ratifications of Trust Agreements for the Family Properties that

remained, including for the Cornelia Trust, the 2635 Trust, the 2414 Trust, and the Spokane Trust.

157. True and correct copies of those ratifications are attached as **Exhibit S**.

158.  Those Ratifications provided that Shameem, as successor trustee of the LMK Trust, ratified the terms of all of the remaining land trust agreements.

159. In the meantime, on September 2, 2020, KLK Management, LLC, was created by Shameem and her husband.

160. A true and correct copy of the Article of Organization is attached as **Exhibit T**.

161. Shameem and Hyder are the sole managers and members of KLK Management, LLC.

162. On September 11, 2020, an amendment was filed changing the principal place of business of KLK Management to Shameem home in Glenview.

163. After KLK Management was created, the property tax bills for the Cornelia Property, the 2414 Property, and the 2635 Property, as well as the Spokane House, were transferred from the Defendant's name or Khan & Associates to KLK Management, LLC.

164. As of the filing of this Complaint, the Illinois Secretary of State still shows the Defendant as the secretary of Khan & Associates, although at his sister, Shameem's address in Glenview, where he has never lived.

165. On information and belief, Khan & Associates no longer operates. KLK Management, LLC has taken the place of Khan & Associates in managing the remaining Family Properties as Khan & Associates successor.

### H. Another Contempt Hearing and the Bankruptcy Filing

166. The Defendant filed a motion to reconsider the Divorce Court's July 17, 2020 ruling citing, among other things, Lateef's passing on August 6, 2020, as a reason to reduce the monthly maintenance.

167. Mehvish then filed another motion for rule to show cause.

168. On September 9, 2020, Divorce Court denied the Defendant's motion to reconsider the July 17, 2020 order, set the motion for rule to show cause for September 25, 2020.

169. A true and correct copy of the September 9, 2020, order is attached as **Exhibit U**.

170. On September 18, 2020, the Defendant filed his skeletal bankruptcy petition.

171. The Defendant asserted to the Divorce Court and in his bankruptcy documents that his employment with Khan & Associates was again terminated, this time on September 11, 2020, just one week before filing for bankruptcy.

172. That purported termination occurred on the exact same day, *i.e.*, September 11, 2020, that the Defendant engaged his current bankruptcy counsel.

173. As was the Defendant's purported termination on the eve of the spousal support hearing, his termination on the eve of bankruptcy was done with same intent to conceal his true income and assets.

174. On September 25, 2020, the Divorce Court entered an order vacating the trial set for November due to the bankruptcy filing.

175. A true and correct copy of the September 25, 2020, order is attached as **Exhibit V**.

176. However, the Divorce Court proceeded with the domestic support obligation aspect of the hearing.

177. The Divorce Court found that the Defendant had the continued ability to pay the spousal support as ordered and held his failure to do so was "willful and contumacious and without compelling cause or justification."

178. The Divorce Court again found "[t]he testimony of Waseem Khan is not credible."

179. The Divorce Court held the Defendant in contempt again on that day and ordered that the Sheriff to take custody of the Defendant if the contempt was not purged in 30 days.

180. Around that time the Defendant moved to Georgia, outside jurisdiction of the Cook County Sheriff.

181. The Divorce Court held a hearing again on or about October 22, 2020.

182. After that hearing the Divorce Court entered an order expressly finding that the Defendant's failure to make the "payment of maintenance is willful and contumacious and without compelling cause or justification."

183. A true and correct copy of the October 22, 2020, order is attached as **<u>Exhibit W</u>**.

184. The Divorce Court went on to hold that the Defendant "has the ability to pay the $12,600 order payable by this Court in the July 30, 2018 Order."

185. And again, the Divorce Court explicitly found "*The testimony of Waseem Khan is not credible.*"

186. The Divorce Court ordered that "Waseem Khan is hereby ordered committed

to the Cook County Jail, to remain until he has paid the bond amount set forth in the commitment order of $6,300" and issued a body attachment the same day.

187. Shortly thereafter, Defendant again moved in the Divorce Case to modify his support obligations, this time citing to his move to Georgia and his assertion that he has accepted a position at the Peachtree Medical Center for $10 per hour as a reason.

188. In the motion to modify support obligations, the Defendant did not disclose his family relationship to Peachtree Medical Center or that he was essentially working for his sister for a purported $10 per hour.

189. On information and belief, the Defendant's motion to modify his support obligations was again denied.

190. On information and belief, the Defendant has been held in contempt by the Divorce Court for non-payment of his spousal obligations on at least two additional occasions.

### I.  *The Source of Funds to Pay Debtor's Counsel.*

191. The original 2016(b) disclosure of compensation form filed in this case provides that the Defendant's attorney was paid $10,000 prepetition from the "IOLTA of Brown, Udell, Pomerantz & Delrahim," a/k/a BUPD Law, Glenn Udell's law firm.

192. This representation fails to disclose the source of the funds as required by 11 U.S.C. § 329.

193. Glenn Udell of BUPD Law has been acting as the attorney for the LMK Trust in the underlying bankruptcy case.

194. He was also the attorney for the LMK Trust in selling the Sheridan Property and Foster Property for 22,000,000 and he took $600,000 in "legal fees" from that

transaction.

195. On information and belief, Glenn Udell of BUPD Law signed the settlement statement on behalf of the Sheridan Trust and Foster Trust when those properties were sold.

196. Glenn Udell is also the registered agent for Khan & Associates and KLK Management LLC.

197. On information and belief, Glenn Udell completed and filed the paperwork to create KLK Management for Shameem and Hyder.

198. The Defendant has now asserted in his amended 2016(b) statement that the $10,000 that came out of BUPD Law's IOLTA account was "provided by the Debtor's sister, Shameem Khan," although whether the funds came from her in the capacity as trustee of the LMK Trust remains unknown.

## COUNT I – 11 U.S.C. § 727(A)(2)(A)
### (THE SPOKANE HOUSE)

199. The U.S. Trustee realleges and incorporates herein the allegations contained all other paragraphs of this Complaint.

200. The Defendant, with intent to hinder, delay, or defraud one or more creditors, and an officer of the estate, has continuously concealed property of the Debtor within one year before the petition date.

201. Mehvish is one of many a creditor in the underlying bankruptcy case.

202. As provided above, prior to May of 2016, the Debtor individually owned the Spokane House, by deed recorded on 1/23/2004, with the Cook County Recorder of Deeds under Doc. No. 0402304273.

203. In 2005 the Defendant reaffirmed his personal ownership of the Spokane House by providing a mortgage against it. In the mortgage document itself the Defendant asserted that he was the owner of the Spokane House with the right to encumber it.

204. In approximately April of 2016, Mehvish moved out of the Spokane House.

205. In May of 2016, in anticipation of the Divorce Case, the Defendant transferred the Spokane House to the Spokane Trust.

206. The Spokane Trust was then amended only days later in an attempt to ensure that Mahvish could not receive any benefit from the ownership of the Spokane House.

207. The Spokane Trust provided no consideration for the transfer.

208. The transfer of the Spokane House to the Spokane Trust had no practical effect.

209. The Defendant still resided at the Spokane House after the 2016 transfer as if he still owned the property, and he still resided there as of the Petition Date as the beneficial or equitable owner.

210. The Defendant was also still obligated on the mortgage he provided against the Spokane House in 2005 and the property tax bills were still addressed to the Defendant individually.

211. In 2017 the beneficial interest in the Spokane Trust was transferred to the LMK Trust.

212. Again, this transfer had no practical effect.

213. The Defendant resided at the Spokane House as if he was still the beneficial or equitable owner, he was still obligated on the mortgage, and he still received the

property tax bills in his individual name.

214. In the July 6, 2020 financial affidavit made under oath and filed in the Divorce Cases, the Defendant listed himself and Mehvish as the title owners of the Spokane House.

215. A true and correct copy of the financial affidavit executed by the Defendant dated July 6, 2020, is attached as **Exhibit X**.

216. Up until the Petition Date the Defendant used the Spokane House as his own.

217. With the actual intent to hinder, delay, or defraud a creditor or creditors, the Defendant has continued to conceal his true interest in the Spokane House within the one-year period prior to the Petition Date.

**WHEREFORE**, the U.S. Trustee respectfully requests that this Court enter a judgment in his favor and against the Defendant holding that his discharge is denied pursuant to 11 U.S.C. § 727(a)(2); and granting any other relief the Court deems just and proper.

## COUNT II – 11 U.S.C. § 727(A)(2)(B)
### (THE SPOKANE HOUSE)

218. The U.S. Trustee realleges and incorporates herein the allegations contained all other paragraphs of this Complaint.

219. The Defendant, with intent to hinder, delay, or defraud one or more creditors, and an officer of the estate, has continuously concealed property of the estate after the date of the filing of the petition.

220. The Defendant asserted on his Schedule A and Amended Schedule A that he had no legal or equitable interest in the Spokane House.

221. The Defendant completed his schedules under penalty of perjury.

222. On the Petition Date, and for a period thereafter, the Defendant continued to reside at the Spokane House in the same fashion he did prior to the May 2016 transfer to the Spokane Trust. The Defendant was also still obligated on the mortgage following the May 2016 transfer to the Spokane Trust.

223. Since Defendant moved to Georgia, outside the reach of the Cook County Sheriff, he has allowed possession of the Spokane House to remain with one or more of his children.

224. After Shameem and her husband created KLK Management (just days prior to the Defendant's bankruptcy filing) the property tax bills were promptly changed to the name of that entity.

225. The address for KLK Management, LLC on the property tax bill is now Shameem's personal address in Glenview.

226. This is a further concealment and transfer of the Defendant's equitable interest in the Spokane House.

227. The Spokane Property is now for sale for $975,000, leaving over $300,000 in equity in the home.

228. The chapter 7 trustee is not the seller of the Spokane House and no motion for authority to sell the Spokane House has been filed.

229. On information and belief, the Defendant's sister is attempting to sell the Spokane House through the LMK Trust and keep the proceeds from the bankruptcy estate.

230. With an intent to hinder, delay, or defraud the trustee, the Defendant has

continued to conceal his beneficial or equitable interest in the Spokane House since the Petition Date.

**WHEREFORE**, the U.S. Trustee respectfully requests that this Court enter a judgment in his favor and against the Defendant holding that his discharge is denied pursuant to 11 U.S.C. § 727(a)(2); and granting any other relief the Court deems just and proper.

## COUNT III – 11 U.S.C. § 727(A)(2)(A)
### (THE 2007 BENTLEY FLYING SPUR)

231. The U.S. Trustee realleges and incorporates herein the allegations contained all other paragraphs of this Complaint.

232. Prior to May of 2016 the Defendant was the owner of a 2007 Bentley Flying Spur automobile.

233. In May of 2016, the same month the Spokane House was transferred to the Spokane Trust, the Defendant transferred that vehicle to his father, Lateef.

234. That vehicle was maintained at the Spokane House before and after the May 2016 transfer.

235. Lateef did not provide any consideration for the transfer of the vehicle.

236. As of the Petition Date the vehicle was still at the Spokane House.

237. The Defendant transferred title to the vehicle to his father in anticipation of the Divorce Case to ensure that his wife would not receive any value from the vehicle.

238. The Defendant maintained a beneficial or equitable interest in the vehicle in the one-year period immediately preceding the Petition Date.

239. With the intent to hinder, delay or defraud his creditors, including Mehvish,

the Defendant continued to conceal his beneficial or equitable interest in the vehicle in the 1-year period immediately preceding the Petition Date.

**WHEREFORE**, the U.S. Trustee respectfully requests that this Court enter a judgment in his favor and against the Defendant holding that his discharge is denied pursuant to 11 U.S.C. § 727(a)(2); and granting any other relief the Court deems just and proper.

**<u>COUNT IV – 11 U.S.C. § 727(A)(2)(B)</u>**
**(THE 2007 BENTLEY FLYING SPUR)**

240. The U.S. Trustee realleges and incorporates herein the allegations contained all other paragraphs of this Complaint.

241. The Defendant asserted on his Schedule A and Amended Schedule A that he had no legal or equitable interest in the 2007 Bentley Flying Spur.

242. The Defendant completed his schedules under penalty of perjury

243. The Defendant asserted on his Schedule A and Amended Schedule A that he had no legal or equitable interest in the vehicle.

244. On the Petition Date, and for a period thereafter, the vehicle remained with the Defendant at Spokane House in the same fashion he did prior to the May 2016 transfer to Lateef.

245. On information and belief, the vehicle is owned free and clear of encumbrances.

246. On information and belief, after the Defendant moved to Georgia, Shameem took control of the vehicle and may be attempting to sell it.

247. With an intent to hinder, delay, or defraud the trustee, the Defendant has

continued to conceal his beneficial or equitable interest in the Bentley Flying Spur since the Petition Date.

**WHEREFORE**, the U.S. Trustee respectfully requests that this Court enter a judgment in his favor and against the Defendant holding that his discharge is denied pursuant to 11 U.S.C. § 727(a)(2); and granting any other relief the Court deems just and proper.

### COUNT V – 11 U.S.C. § 727(A)(2)(B)
### (THE 2007 ROLLS ROYCE)

248. The U.S. Trustee realleges and incorporates herein the allegations contained all other paragraphs of this Complaint.

249. On the Schedule A/B as originally filed on Oct. 1, 2020, the Debtor failed to disclose his ownership interest in a 2007 Rolls Royce.

250. The Defendant knew he was the title owner of the Rolls Royce as of the Petition Date because he filed a financial affidavit in the Divorce Case dated July 6, 2020 (attached as Exhibit X) only a few months before filing for bankruptcy that listed his ownership of the Rolls Royce. *See* **Exhibit X**.

251. The Defendant's Statement of Financial Affairs did not reflect a transfer of the vehicle between July 2020 and the Petition Date.

252. The Defendant also filed a financial affidavit in the Divorce Case dated September 24, 2020, just days after the bankruptcy was filed, again disclosing under oath the Defendant's ownership interest in the Rolls Royce.

253. A true and correct copy of the financial affidavit executed by the Defendant dated September 24, 2020, is attached as **Exhibit Y**.

254. In fact, all financial affidavits that the Defendant filed in the Divorce Case list his ownership in the Rolls Royce.

255. The Defendant only amended his schedules to list the Rolls Royce after the 341 meeting of creditors where he was confronted by the trustee about his ownership of the asset.

256. With an intent to hinder, delay, or defraud the trustee, the Defendant concealed his interest in the Rolls Royce.

**WHEREFORE**, the U.S. Trustee respectfully requests that this Court enter a judgment in his favor and against the Defendant holding that his discharge is denied pursuant to 11 U.S.C. § 727(a)(2); and granting any other relief the Court deems just and proper.

## COUNT VI – 11 U.S.C. § 727(A)(2)(A)
### (THE FAMILY PROPERTIES)

257. The U.S. Trustee realleges and incorporates herein the allegations contained all other paragraphs of this Complaint.

258. The Defendant's job between the early 2000's to 2020 was to manage and oversee the operations of the Family Properties through Khan & Associates, LLC or individually.

259. The Defendant had so much control over the Family Properties that he personally attempted to sell the Sheridan Property in 2015.

260. The Defendant was also the contingent beneficiary set to obtain equitable ownership of 4 of 5 of the Family Properties upon the death of his parents.

261. Prior to the 2019 sale of the Sheridan Property and the Foster Property the

property tax bills were in the names of Khan & Associates and Waseem Khan, respectively.

262. In 2015, in anticipation of a possible divorce between the Defendant and his wife, the Defendant and his family amended the land trust agreements for the Family Trusts to bar Mehvish from obtaining any value from the Family Properties.

263. In 2017 the beneficial interest in the Family Properties was place in the LMK Trust.

264. The Defendant and his sister Shameem are the two primary beneficiaries of the LMK Trust and were on the Petition Date.

265. The LMK Trust provides that the trustee may provide funds to support the Defendant, including for his comfort and maintenance and even to go on vacations.

266. In 2018 the Defendant filed a financial affidavit in the Divorce Court providing that he received $10,000 per month to pay expenses from his family. That money was derived from the Family Properties and his equitable interests therein.

267. In 2019 the Sheridan Property and the Foster Property were sold for a total of $22,000,000.

268. The LMK Trust was the nominal owner of the beneficial interests in the Sheridan Trust and the Foster Trust at the time.

269. There were millions of dollars in net proceeds from that transaction.

270. The Defendant's sister, Shameem took over as the sole trustee of the LMK Trust upon their father's death in 2020.

271. Since Lateef's death, the property tax bills for the Family Properties that were not sold in 2019, and the Spokane House, were transferred into the name of

KLK Management, LLC, the business that Shameem and her husband started just days before the Defendant filed for bankruptcy.

272. The address for KLK Management to receive the property tax bills is Shameem's personal residence in Glenview.

273. KLK Management was created as the mere continuation of Khan & Associates.

274. Within the one year immediately preceding the Petition Date the Defendant had the right to receive income and distributions from the LMK Trust and had an equitable interest in the remaining Family Properties.

275. During the one-year period prior to the Petition Date, the Defendant has, with the intent to hinder, delay, or defraud one or more creditors, concealed his right to receive income and concealed his equitable interest in the Family Properties.

**WHEREFORE**, the U.S. Trustee respectfully requests that this Court enter a judgment in his favor and against the Defendant holding that his discharge is denied pursuant to 11 U.S.C. § 727(a)(2); and granting any other relief the Court deems just and proper.

## COUNT VII – 11 U.S.C. § 727(A)(2)(A)
### (THE FAMILY PROPERTIES)

276. The U.S. Trustee realleges and incorporates herein the allegations contained all other paragraphs of this Complaint.

277. The Defendant asserted on his Schedule A and Amended Schedule A that he had no legal or equitable interest any of the Family Properties.

278. The Defendant completed his schedules under penalty of perjury

279. On the Petition Date, and for a period thereafter, the Defendant was one of the primary beneficiaries, along with his sister Shameem, of the LMK Trust.

280. The LMK Trust expressly provides that the trustee, Shameem, may provide the Defendant with distributions of interest and principal from the trust for any reason, including for his comfort or maintenance, and even for him to take vacations.

281. With an intent to hinder, delay, or defraud the trustee, the Defendant has, with the intent to hinder, delay, or defraud one or more creditors, concealed his right to receive income and concealed his equitable interest in the remaining Family Properties.

**WHEREFORE**, the U.S. Trustee respectfully requests that this Court enter a judgment in his favor and against the Defendant holding that his discharge is denied pursuant to 11 U.S.C. § 727(a)(2); and granting any other relief the Court deems just and proper.

## COUNT VIII – 11 U.S.C. § 727(A)(4)
### (KNOWING FALSE STATEMENTS)[1]

282. The U.S. Trustee realleges and incorporates herein the allegations contained all other paragraphs of this Complaint.

283. The Defendant knowingly and fraudulently, in connection with the underlying bankruptcy case, made false oaths and accounts on his bankruptcy schedules and statements as follows:

---

[1] Plaintiff does not need to prove each sub-section of this count to obtain judgment. Instead, each sub-section is a stand-alone allegation, and the proof of any one sub-section by a preponderance of the evidence is sufficient to bar entry of the Defendant's discharge.

### J. Schedule A/B - The Rolls Royce.

284. On the Schedule A/B as originally filed on Oct. 1, 2020, the Debtor failed to disclose his ownership interest in a 2007 Rolls Royce.

285. The Defendant knew he was the title owner of the Rolls Royce as of the Petition Date because he filed a financial affidavit in the Divorce Case dated July 6, 2020 (attached as Exhibit X) only a few months before filing for bankruptcy that listed his ownership of the Rolls Royce. *See* **Exhibit X**.

286. The Defendant also filed a financial affidavit in the Divorce Case dated September 25, 2020, just days after the bankruptcy was filed, again disclosing under oath the Defendant's ownership interest in the Rolls Royce. *See* **Exhibit Y**.

287. In fact, all financial affidavits that the Defendant filed in the Divorce Case list his ownership in the Rolls Royce.

288. The Defendant only amended his schedules to list the Rolls Royce after the 341 meeting of creditors.

289. The Defendant knowingly and fraudulently failed to list his interest in the Rolls Royce on his initial schedules in hopes that it would not be discovered.

### K. Schedule A/B - The Spokane House.

290. On both his initial Schedule A/B and the Amended A/B the Defendant failed to list his interest in the Spokane House.

291. The Defendant had legal title to the Spokane House in his name individually from 2004 to 2016.

292. In 2005 the Defendant took out a mortgage on the Spokane House as its individual owner.

293. In 2016 the Spokane House was transferred to the Spokane Trust, an insider entity, for no consideration, and with no practical effect.

294. The beneficial interest in the Spokane Trust was transferred to the LMK Trust in 2017, again an insider entity, for no consideration, and with no practical effect.

295. The Defendant continued to reside at the Spokane House after the 2016 and 2017 transfer in the same manner he had prior to those transfers.

296. The Defendant retained an equitable interest in the Spokane House as of the Petition Date.

297. The Defendant knew he had an interest in the Spokane House as of the Petition Date because he filed a financial affidavit in the Divorce Case dated July 6, 2020 (attached as Exhibit X) only a few months before filing for bankruptcy that listed his ownership the Spokane House. *See* **Exhibit X**.

298. The Defendant also filed a financial affidavit in the Divorce Case dated September 25, 2020, just after the bankruptcy was filed, again disclosing under oath the Defendant's interest in the Spokane House. *See* **Exhibit Y**.

299. The Defendant knowingly and fraudulently failed to list his interest in the Spokane House on his initial schedules and amended schedules.

### L.  Schedule A/B - The Bentley Flying Spur

300. On both his initial Schedule A/B and the Amended A/B the Defendant failed to list his interest in the 2007 Bentley Flying Spur.

301. The Defendant transferred title of the 2007 Bentley Flying Spur to his father in May of 2016, in the same month he transferred the Spokane House to the Spokane

Trust.

302. The vehicle remained at the Spokane House in the same manner it was kept before the May 2016 transfer, and the Defendant still had access to the vehicle.

303. On information and belief, the Flying Spur remains at the Spokane House.

304. The Defendant knowingly and fraudulently failed to list his interest in the Bentley Flying Spur on his schedules.

### M. Statement of Financial Affairs – Income

305. The Defendant claimed on his statement of financial affairs that $48,200 in wages, commissions, bonus, and tips working for Khan & Associates in 2018.

306. With respect to "any other income" received in 2018, the Defendant disclosed rental income from 3 properties he individually owns.

307. The Debtor, however, earned substantially more than $48,200 in income from Khan & Associates in 2018.

308. The Defendant's financial affidavit provided under oath dated April 18, 2018, provides that the Defendants total gross monthly income was $20,608 (that is nearly $250,000 annually). *See* **Exhibit O**.

309. Unreported income includes amounts that Khan & Associates paid to maintain the Defendant's children's luxury vehicles and his wife's Lexus as well as some other personal expenses.

310. The Defendant was also required to pay between $5,800 and $6,300 per month in 2018 to his wife, and after being compelled by the Divorce Court to do so, paid those amounts, in addition to legal fees for his own divorce attorneys and those of his wife.

311. In 2018 these divorce related debts and payments alone eclipsed the Defendant's asserted income for that year.

312. The payment of personal expenses is income that must reported.

313. The statement of financial affairs also fails to disclose this substantial income for 2019 and 2020. Instead, the statement only reports the Debtor's salary of $4,000 every two weeks from Khan & Associates, and the rental property income.

314. The Defendant, as was the case in 2018, earned substantially more income in 2019 and 2020 than was disclosed on his statement of financial affairs.

315. The Defendant again had to pay in excess of $75,000 to his wife in those years and pay other significant sums to her attorneys, which he ultimately paid most of.

316. On information and belief, the Defendant also did not disclose the income use to purchase or provided gifts with $36,000 to his girlfriend in 2018 and 2019.

317. It also appears that Khan & Associates was still paying for his children's vehicles and his wife's vehicle through 2019 and into 2020 as well.

318. All of these amounts to pay these divorce related debts and personal expenses are income.

319. The Defendant knowingly and fraudulently failed to disclose this substantial income in his statement of financial affairs.

**WHEREFORE**, the U.S. Trustee respectfully requests that this Court enter a judgment in his favor and against the Defendant holding that his discharge is denied pursuant to 11 U.S.C. § 727(a)(4); and granting any other relief the Court deems just and proper.

## COUNT IX – 11 U.S.C. § 727(A)(5)
## (FAILURE TO EXPLAIN ASSET DEFICIENCY)

320. The U.S. Trustee realleges and incorporates herein the allegations contained all other paragraphs of this Complaint.

321. The Defendant has failed to satisfactorily explain his loss of assets and deficiency of assets available to meet his liabilities.

322. Prior to the Defendant's Divorce Case in 2016 the Defendant lived a lavish lifestyle, with exotic vehicles and a luxury home.

323. Once the divorce was contemplated, however, the Defendant transferred nearly all of his assets and manipulated his legal relationships and rights to income to appear destitute.

324. Among other things, the Defendant has failed to satisfactorily explain the loss or of deficiency of assets to meet his liabilities including:

    a.  His failure to satisfactorily explain why he does not own the Spokane House and therefore entitled to its approximate equity of $300,000.

    b.  His failure to satisfactorily explain why the Rolls Royce and Bentley Continental are not his property and thus property of the estate that could be used to satisfy liabilities.

    c.  His failure to satisfactorily explain why the LMK Trust does not make distributions to him to pay his debts or why he has not sought to force the trust to provide him distributions.

    d.  His failure to satisfactorily explain why his sister, instead of the Defendant, is now trustee in charge of the LMK Trust and the Family Properties even

though he ran those properties and their finances for nearly 20 years.

 e. His failure to satisfactorily explain why he did not receive any of the proceeds from the sale of the Sheridan Property and the Foster Property.

 f. His failure to satisfactorily explain why he is no longer employed by Khan & Associates in managing the Family Properties or why he was required to move to Georgia and work for his sister Zia for $10 per hour.

325. The Defendant has continuously asserted in the Divorce Court leading up to the filing of this case that he does not have sufficient assets and income available to make is spousal support payments of $6,300 per month, in addition to paying for his wife's attorneys' fees.

326. The Divorce Court has found the Defendant's testimony regarding his ability to pay to be not credible on at least 4 occasions, including during this case.

327. This is buttressed by the Defendant's own conduct, including his gifts of approximately $36,000 to his new girlfriend in 2018 and 2019.

328. The Defendant has the burden of satisfactorily explaining his lack of assets sufficient to pay his debt. He has not done so. The Defendant's failure to satisfactorily explain any of the deficiencies in paragraph 324(a) through (f) is sufficient to bar the Defendant's discharge.

**WHEREFORE**, the U.S. Trustee respectfully requests that this Court enter a judgment in his favor and against the Defendant holding that his discharge is denied pursuant to 11 U.S.C. § 727(a)(5); and granting any other relief the Court deems just and proper.

Dated: April 17, 2020

Respectfully Submitted:

**PATRICK S. LAYNG**,
**UNITED STATES TRUSTEE**,

By: <u>David Paul Holtkamp</u>
David Paul Holtkamp
U.S. Department of Justice
Office of the United States Trustee
219 S. Dearborn, Room 873
Chicago, Illinois 60604
Main: (312) 353-5014
Cell:   (202) 567-1489